**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

JEFFREY HUNT and
ALICE ULIBARRI,

       Plaintiffs,

v.                                                                                    No. CIV 11-1144 JP/SCY

CENTRAL CONSOLIDATED SCHOOL
DISTRICT, a municipal government agency,
and HOSKIE BENALLY, ED MARQUEZ,
DON LEVINSKI, NANCY FRAZINNI [sic],
MATTHEW TSO, SCOTT NICOLAY, and
PHIL KASPER, Individually,

       Defendants.

                                              Consolidated with:

SHARON JENSEN,

       Plaintiff,

v.                                                                                    No. CIV 12-1018 JP/SCY

CENTRAL CONSOLIDATED SCHOOL
DISTRICT, a municipal government agency,
and HOSKIE BENALLY, ED MARQUEZ,
DON LEVINSKI, MATTHEW TSO,
and SCOTT NICOLAY, Individually,

       Defendants.

**MEMORANDUM OPINION AND ORDER**

DEFENDANT NANCY FRAZZINI'S MOTION FOR SUMMARY JUDGMENT AS

TO PLAINTIFF JEFFREY HUNT'S CLAIMS AND ACCOMPANYING MEMORANDUM

(Motion as to Mr. Hunt) (Doc. Nos. 183, 184) asks the Court to dismiss Plaintiff Hunt's claims

1

of conspiracy and discrimination against Ms. Frazzini. DEFENDANT NANCY FRAZZINI'S
MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF ULIBARRI'S CLAIMS AND
ACCOMPANYING MEMORANDUM (Motion as to Ms. Ulibarri) (Doc. Nos. 181, 182)
similarly seeks summary judgment as to Plaintiff Ulibarri's claims of conspiracy and
discrimination against Ms. Frazzini. Plaintiffs filed separate Responses to Ms. Frazzini's two
Motions for Summary Judgment, essentially arguing that Plaintiffs have provided "abundant
evidence of the discriminatory motive and effect of [a] conspiracy" and that Plaintiffs' claims are
"ready for trial." Hunt Response at 3 (Doc. No. 220); Ulibarri Response at 29 (Doc. No. 236).
Defendant Frazzini's Replies in support of the Motions for Summary Judgment argue, in part,
that Plaintiffs have failed to concisely identify genuine disputes of material fact and have instead
presented "lengthy, convoluted, unsupported, conclusory, and immaterial discussions," Replies
at 2 (Doc. Nos. 256 , 257). Defendant Frazzini seeks summary judgment and/or qualified
immunity as to all of Plaintiffs' claims against her.

## Background[1]

Both Plaintiffs Jeffrey Hunt and Alice Ulibarri are "Anglo and Mormon" and allege that
Defendant Frazzini participated in a conspiracy to discriminate against them based on their race
and religion. THIRD AMENDED COMPLAINT FOR DAMAGES AND DECLARATORY
JUDGMENT ¶¶ 1, 2, 72 (Count IV) (Doc. No. 93). Plaintiffs contend that in about 2011, a
"conspiracy formed within the Senior Supervisory staff at CCSD" that resulted in demoting or
removing Plaintiffs from their CCSD positions and replacing them with non-Mormon or "Native
American aligned" employees. *See* Amended Joint Status Report and Provisional Discovery Plan

---

[1] The Court does not repeat the Procedural Background of this case which is discussed in detail in its March 2, 2016
MEMORANDUM OPINION AND ORDER at 3–6 (Doc. No. 273). The Court observes that Plaintiff Sharon
Jensen, whose claims the Court dismissed, did not name Ms. Frazzini as a Defendant. *See* Jensen Second Amended
Complaint (Doc. No. 92). Thus, the Court examines only claims brought by Plaintiffs Hunt and Ulibarri against Ms.
Frazzini.

at 3 (Doc. No. 124). Plaintiffs also bring claims against Ms. Frazzini under the New Mexico

Human Rights Act (Count VIII) and Title VII (Count X), asserting that Ms. Frazzini

discriminated against them based on their race and/or religion. Complaint ¶¶ 76–78, 82–84.

At all pertinent times, Plaintiffs were residents of Kirtland, San Juan County, New

Mexico and were employees of Central Consolidated School District (CCSD).[2] According to the

2000 census, Kirtland, New Mexico had a population of a little over 6,000 residents. The town

was founded in the early 1880s by Mormons or Latter-Day Saints (LDS), who named the New

Mexico town after Kirtland, Ohio.[3] CCSD includes about 18 schools in a 4,500 square mile area,

serves numerous communities, and has a total enrollment of approximately 6,800 students, a

majority of whom are Native American. *See* Complaint ¶ 3 (CCSD "has both a predominantly

Native American student body, and a predominantly Native American workforce with a close to

90% Native American student body, and …, a close to 75% Native American workforce."). *See*

*also* Defendants' Response to Interrogatory No. 18 (Doc. No. 223–4). *But see* Defendants'

Response to Interrogatory No. 19 (noting Defendants' estimate that about 52% of the workforce

was Native American) and Byron Manning's Aff. ¶ 8 (stating that more than 50% of CCSD's

work force was Native American) (Doc. No. 223–5).[4]

---

[2] The background facts are undisputed and set forth in more detail in the Court's March 2, 2016 Opinion.
[3] *See* Phil Kasper Dep. (Doc. No. 174–7) at 32. *See also* https://en.wikipedia.org/wiki/Kirtland,New_Mexico
(January 28, 2016). The Court may take judicial notice of facts that are generally known and accepted. *Mills v.*
*Denver Tramway Corp.*, 155 F.2d 808, 811 (10th Cir. 1946).
[4] As is true with Plaintiffs' Responses to other Motions for Summary Judgment, Plaintiffs have attached the same or
similar exhibits to all of the Reponses in violation of D.N.M. LR-Civ. 10.7.

**Legal Standards**

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc*., 912 F.2d 1238, 1241 (10th Cir. 1990). The party seeking summary judgment bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (internal quotation marks omitted). Once the movant meets this burden, Rule 56 requires the non-moving party to designate specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 256 (1986). In considering a motion for summary judgment, then, the Court's "role is simply to determine whether the evidence proffered by plaintiff would be sufficient, if believed by the ultimate factfinder, to sustain her claim." *Foster v. Alliedsignal, Inc*., 293 F.3d 1187, 1195 (10th Cir. 2002).

"The doctrine of qualified immunity protects public or government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant asserts qualified immunity, the plaintiff bears the heavy burden of satisfying a "strict two-part test." *McBeth v. Himes*, 598 F.3d 708, 716 (10th Cir. 2010) (citation omitted). The plaintiff must establish 1) that the defendant violated a constitutional or statutory right, and

2) that the right was clearly established at the time of the defendant's conduct. *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015).

When the defendant moves for summary judgment based on qualified immunity, the Court views the facts in the light most favorable to the non-moving party and resolves all factual disputes and reasonable inferences in its favor. *See Estate of Booker* v. *Gomez*, 745 F.3d 405, 411 (10th Cir. 2014).

### Undisputed Material Facts

On May 28, 2011, CCSD's School Board voted to make Mr. Levinski CCSD's acting Superintendent. In June and July 2011, Mr. Levinski implemented a reorganization that resulted in the elimination of some higher level administrative positions, in the reassignment of some CCSD employees from Director positions to Coordinator positions, and in other reclassifications of positions. Mr. Levinski's rationale for the administrative reorganization included his plans "to bring CCSD's administrative expenses in line with the administrative expenses of similar school districts in New Mexico," to shift funding away from the administrative expenses and into the classroom, to increase the educational level of employees in upper administration positions, and "to increase minority representation in the supervisory positions." *See* Defendants' Response to Discovery (Doc. No. 179–5 at 3); Levinski Dep. at 105, 108 (Doc. No. 220–1); Randy Manning Dep. at 64 (Doc. No. 224–3).

The 2011 reorganization at CCSD affected both Plaintiff Hunt and Plaintiff Ulibarri. For about 14 years until July 2011, Plaintiff Hunt had been CCSD's Director of Transportation, but that position was eliminated in the 2011 reorganization. Plaintiff Hunt signed an employment contract for the school year of 2011–2012 in the reassigned position of Coordinator of Transportation. He was to receive the same salary of over $85,000.00 that he had received

previously. On July 25, 2011, Mr. Levinski told Plaintiff Hunt that he was being reassigned from Coordinator of Transportation to the Grounds Foreman although he was to receive the same salary for the contract year. Mr. Levinski gave Plaintiff Hunt a letter, dated July 25, 2011, to this effect. Plaintiff Hunt took sick leave following the July 25, 2011 meeting and never returned to work at CCSD. He used accrued paid leave and exhausted that leave as of February 2012. Plaintiff Hunt resigned, effective February 24, 2012. He could have remained employed at CCSD as the Grounds Foreman through June 29, 2012, the end of his contract year.

For about 7 years until July 2011, Plaintiff Ulibarri was CCSD's Custodial Supervisor and was paid $59,807.00. In July 2011, as a result of the reorganization, the Custodial Supervisor position was eliminated. Ms. Ulibarri signed an employment contract in July 2011, although she was not assigned a specific position at that time. However, she was promised the same salary for the school year that she had received previously. Plaintiff Ulibarri remained employed by CCSD until she submitted her resignation, effective February 24, 2012, but she could have remained employed at CCSD until June 29, 2012.

Ms. Frazzini was first employed by CCSD in 1995, and she became the Director of Human Resources (HR) in 2007. In August 2011, Mr. Levinski informed Ms. Frazzini that she was being reassigned to a position in CCSD's Data Department. Ms. Frazzini remained as HR Director until September 8, 2011, at which time Mr. Phil Kasper became HR Director and Ms. Frazzini began working in the Data Department.

Defendant Levinski had the exclusive power and duty to hire, fire, and assign employees, and he was responsible for reassigning CCSD employees in mid-2011, including the reassignment of Mr. Hunt from Director to Coordinator of Transportation, and subsequently to Grounds Foreman, and the reassignment of Ms. Ulibarri from Custodial Supervisor to other

positions in CCSD. Mr. Levinski did not consult Ms. Frazzini in her role as HR Director regarding Plaintiffs' reassignments other than to have Ms. Frazzini tell Ms. Ulibarri that her position was being eliminated by the 2011 reorganization.[5] Ms. Frazzini was not a party to Plaintiffs' written employment contracts.

As HR Director, Ms. Frazzini had a number of conversations with each Plaintiff before and/or after the 2011 reassignments. For example, Mr. Hunt and Ms. Frazzini spoke on various occasions about Mr. Hunt's retirement goals and his options for taking accrued leave. Ms. Frazzini communicated with Mr. Hunt orally and in writing to explain his Family Medical Leave Act (FMLA) rights. Ms. Frazzini notified Ms. Ulibarri that although her Custodial Supervisor position was eliminated, she would remain employed at her promised salary for the remainder of the 2011–2012 school year. Ms. Frazzini found Ms. Ulibarri a temporary job in CCSD's Human Resources Department. As of September 7, 2011, Ms. Frazzini no longer had authority to take any action regarding HR and personnel issues.

Even according to Plaintiffs, Ms. Frazzini played a minor role in the alleged conspiracy. Ms. Frazzini "was not a central conspirator." Ulibarri Response at 5. Mr. Hunt admits that any alleged failures by Ms. Frazzini are limited to a period of about six weeks, from July 25, 2011 to September 7, 2011, the last day Ms. Frazzini was the HR Director. Hunt Dep. at 255 (Doc. No. 184–3). Notably, Ms. Frazzini might be viewed as a victim of the alleged conspiracy since she, like Plaintiffs, was reassigned by Mr. Levinski to a position with less responsibility and less prestige in mid-2011 during the reorganization. *See* Hunt Response at 23 (describing Ms. Frazzini as a co-conspirator and a victim of the conspiracy). Notwithstanding Ms. Frazzini's own

---

[5] When Ms. Ulibarri's position of Custodial Supervisor was eliminated, she was not immediately reassigned to a different position. Ms. Frazzini tried to find a position for Ms. Ulibarri, including a temporary job in the Human Resource Department and a possible clerical position in the Data Department. Ulibarri Dep. at 83, 231; Frazzini Aff. ¶¶ 10–11. However, Ms. Ulibarri used six months of her sick leave and was paid her regular salary of about $59,000.00 before resigning, effective February 24, 2012. Ulibarri Dep. at 228–29.

demotion during the 2011 reorganization, Plaintiffs attempt to build a case against her as a conspirator who intentionally discriminated against them by failing to protect them from Mr. Levinski's reassignment decisions.

## Discussion

1. Legal Standards

    a. *Conspiracy*

To prove a conspiracy in violation of 42 U.S.C. § 1985(3), a plaintiff must show "(1) the existence of a conspiracy (2) intended to deny [the plaintiff] equal protection under the laws or equal privileges and immunities of the laws (3) resulting in an injury or deprivation of federally-protected rights, and (4) an overt act in furtherance of the object of the conspiracy." *Murray v. City of Sapulpa,* 45 F.3d 1417, 1423 (10th Cir. 1995) (citations omitted). *See also Tilton v. Richardson,* 6 F.3d 683, 686 (10th Cir. 1993), *cert. denied,* 510 U.S. 1093 (1994) (setting out essential elements of a § 1985(3) conspiracy claim). To support a conspiracy claim, a plaintiff must show a meeting of the minds or agreement among the defendants and a concerted action. *See Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998) (discussing § 1983 conspiracy claim). Section 1985(3) only reaches conspiracies "motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus."[6] *Tilton,* 6 F.3d at 686.

A plaintiff may rely on direct or circumstantial evidence to support a conspiracy claim. *See Gallegos v. City and Cnty of Denver*, 984 F.2d 358, 364 (10th Cir.) (noting that "plaintiff has not established, by either direct or circumstantial evidence, that there was a meeting of minds or

---

[6] It is unclear whether Anglo individuals may bring a claim of unlawful conspiracy under § 1985(3). *See United Brotherhood of Carpenters & Joiners v. Scott*, 463 U.S. 825, 837 (1983) (noting that it was a "close question whether § 1985(3) was intended to reach any class-based animus other than animus against Negroes"). However, Defendants did not raise this question and the Court does not decide it.

agreement among certain of the defendants, discriminatorily motivated, to deprive her of equal protection"), *cert. denied*, 508 U.S. 972 (1993).

        b.  *Discrimination under Title VII/New Mexico HRA*

"The relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of [Title VII]." *Haynes v. Williams*, 88 F.3d 898, 899 (10th Cir. 1996) (citation omitted). Because Judge Browning already dismissed Plaintiffs' Title VII claims against all of the individual Defendants, *Hunt, et al. v. Central Consol. Sch. Dist.*, 951 F. Supp. 2d 1136, 1204–05 (D.N.M. 2013), there is no need to address a Title VII claim against Defendant Frazzini.

With respect to their claims of disparate treatment discrimination under the New Mexico HRA, Plaintiffs bear the burden of establishing that: 1) the plaintiff belongs to a protected class; 2) the plaintiff was qualified for the position; 3) the plaintiff suffered an adverse employment action; and 4) the plaintiff was treated less favorably than others. *See Argo v. Blue Cross and Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1201 (10th Cir. 2006). [7] However, in reverse discrimination cases, the first element is modified to require the plaintiff to establish background circumstances that support an inference that the defendant is one of the unusual employers who discriminates against groups who normally do not experience discrimination. *Id.* (citation omitted).

    2.  Parties' Positions

Ms. Frazzini argues that she did not take any kind of adverse action against Mr. Hunt or Ms. Ulibarri, and that she caused no injury to either Plaintiff. She played no role in the 2011 reorganization, did not make any reassignment decisions as to Plaintiffs or any other employee,

---

[7] The same analysis applies to the discrimination claims whether brought under Title VII or its state law analog, the New Mexico Human Rights Act. *Garcia–Montoya v. State Treasurer's Office*, 2001–NMSC–003, ¶ 39, 130 N.M. 25, 16 P.3d 1084.

and had no authority to hire, fire, or make reassignment decisions. Ms. Frazzini had not been the

HR Director for over five months when Plaintiffs resigned in February 2012. Ms. Frazzini argues

that, without evidence showing that Ms. Frazzini caused economic or emotional damage to either

Plaintiff, all of Plaintiffs' claims against her must fail as a matter of law. Alternatively, Ms.

Frazzini asserts that she is entitled to qualified immunity.

In support of Mr. Hunt's position, Plaintiffs supply what has become their customary 20

pages of argument, much of which is immaterial and/or conclusory. *See, e.g.,* Responses to

Motions for Summary Judgment (Doc. Nos. 179, 180). Plaintiffs misidentify their rambling

argument as "Substantially-Evidenced Facts." Hunt Response at 4–24. In support of Ms.

Ulibarri's position, Plaintiffs contend they have shifted course after having responded to nine

summary judgment motions and having realized that the "20-plus pages, evidenced by 225-pages

of exhibits" (often attached to each of the Responses), "threatens to overwhelm the briefing

process" and the Court. Ulibarri Response at 4. Plaintiffs' attorney provides the following

italicized note in brackets:

> For the first 6 of the nine Responses [to Motions for Summary
> Judgment], [Plaintiffs] have submitted a full set of controverted
> facts referencing "Plaintiffs' Statement of Substantially-Evidenced
> Facts." This has led to a "Substantially-Evidenced Facts" section
> amounting to 20-plus pages, evidenced by 225-pages of exhibits,
> which threatens to overwhelm the briefing process. At this point,
> Plaintiffs will refrain from continuing to overwhelm the Court file,
> and refer instead to the involved previously-filed documents by
> reference and include their contents fully herein, and as if
> contained herein by referencing the following documents in the
> Court file – the "Plaintiffs' Response in Opposition to the
> Summary Judgment Motion of Defendant Benally," filed October
> 13, 2014, and consisting of five filed documents, as follows:
> Docket Number 225[8] containing the Brief (with the involved
> "Plaintiffs' Statement of Substantially-Evidenced Facts at 5-27
> with 24 numbered paragraphs) and Exhibit 1; Docket Number 226

---

[8] Docket entries 225–229 contain Plaintiffs' Response plus exhibits to Defendant Benally's Motion for Summary
Judgment that the Court has not yet addressed.

> containing Exhibits 2 through 8; Docket Number 227 containing
> Exhibits 9 through 13; Docket Number 228 containing Exhibits 14
> through 19; and Docket Number 229 containing Exhibits 20
> through 27). This Response will contain a brief "Supplementary
> Plaintiffs' Statement of Substantially-Evidenced Facts" with a few
> more Exhibits, and those are what they state they are – a small
> supplementation additional to the "Plaintiffs' Statement of
> Substantially-Evidenced Fact" contained in Court Docket Numbers
> 225 through 229, including the involved exhibits. Thus, any
> additional paragraphs to the Statement of Facts will start with
> Paragraph 25; and any additional exhibits will start with Number
> 28.

Ulibarri Response at 4–5.

The Court cannot make sense of Plaintiffs' attorney's note and more importantly, does not see how Plaintiffs' "new" approach has helped. For example, there is little difference in Ms. Ulibarri's Response to Ms. Frazzini's Motion, which is still 30 pages long and which, like the other Responses, contains little application of the law to the facts. Moreover, the Court does not know which Statement of Facts begins with Paragraph No. 25 or how that alleviates any burden on the Court. After Plaintiffs' attorney's note, Plaintiffs list "facts," identified as Marquez Fact Nos. 1, 2, and 3. Ulibarri Response at 5. This is a Response to Ms. Frazzini's Motion, not to Mr. Marquez's Motion.[9] Finally, to the extent Plaintiffs' counsel expects the Court to shuffle back and forth among the similar 30-page Responses to eight or nine of Defendants' Motions for Summary Judgment, the Court declines the invitation.[10]

---

[9] The Court does not know if Plaintiffs' counsel inserted argument and purported "facts" in the Response to Ms. Frazzini's Motion that actually belong in Plaintiffs' Response to Mr. Marquez's Motion or in Plaintiffs' Response to Mr. Benally's Motion. *See* Ulibarri Response at 2C (discussing "central conspirator" Marquez) and 3D (discussing Defendant Benally's role). The Court cannot untangle Plaintiffs' convoluted argument and citations. However, this does not mean Plaintiffs have raised a genuine dispute of material fact for purposes of contesting a Rule 56 Motion. In fact, Plaintiffs never specifically argue that they have raised a genuine dispute of material fact.

[10] For example, Plaintiff Ulibarri's Response, at 5, states the following: "Marquez Fact 3 – This fact is contradicted by all of Plaintiff's [sic] Facts, contained at Docket No. 225 [Response to Benally Motion], 'Plaintiff's Statement of Substantially Evidence [sic] Facts,' pp. 5-27, ¶¶ 1-24 with exhibits at Docket Nos. 225 through 229, and at Court Docket Number 202, 'Plaintiffs [sic] Response to Summary Judgment Motion of Defendants CCSD and Levinski,' Plaintiffs' Statement of Substantially-Evidenced Facts at 16-17, ¶¶ 16-17, and the contract Ulibarri signed was procured by the conspiracy, an informal structure, operating within the formal structure of CCSD." First, this reference is nonsensical. Second, the Court has no idea why it would examine "facts" about Mr. Marquez and

Notwithstanding these briefing deficiencies, Plaintiffs' position regarding Defendant Frazzini's alleged wrongdoing appears to be that Ms. Frazzini should have better protected Plaintiffs from the reorganization and/or the reassignments of their positions. According to Plaintiffs, Ms. Frazzini "did nothing … except move them both toward immediate retirement." Hunt Response at 4. "Defendant Frazzini despite on-going and repeated notice of the involved conspiracy, and on-going repeated notice of the discriminatory acts of the conspiracy, and the discriminatory intent of the conspiracy, steadfastly refused to investigate the wealth of acts, up and until the point she struck an explicit deal with the conspiracy (making her a co-conspirator) guaranteeing her future employment." Ulibarri Response at 3. Defendant Frazzini "explicitly and repeatedly refused to endanger her position as Human Resources Director, by investigating the conspiracy or conducting due process hearings for the Plaintiffs, or doing anything at all to address the growing number of employees who were disciplined, terminated or demoted with discriminatory motive, despite repeated notice and repeated complaints, and provided cover and support for the conspiracy the entire way through." Ulibarri Response at 5–6.[11]

In the Replies, Ms. Frazzini argues that there is no evidence that a conspiracy existed, that she took any actions in the alleged conspiracy, and/or that her conduct caused damages to Plaintiffs. Ms. Frazzini also contends that neither Plaintiff has identified evidence to satisfy the

---

exhibits attached to the Response to Mr. Benally's Motion in determining Ms. Frazzini's Motions. The same type of problem occurs with Plaintiffs' references to "Facts ¶¶ 20, 21, and 22." Ulibarri Response at 12. Those "facts" are not found in Ms. Ulibarri's Response, and are, instead, located in Plaintiffs' Response to Mr. Levinski's Motion. Plaintiffs' briefing has hit a nadir and leaves the Court wondering if the author of the Responses received any training in legal writing.

[11] In analyzing Plaintiffs' position, the Court disregards argument and allegations about other Defendants and about other individuals, e.g., Byron Manning, who are not parties to this lawsuit. Those arguments and allegations are unsupported by evidence in the record and/or are immaterial to Ms. Frazzini's Motions. Furthermore, the Court already rejected Plaintiffs' claims of conspiracy against Defendants Kasper, Levinski, and Tso. *See* Memorandum Opinions and Orders (Doc. Nos. 271, 273, and 278). The Court will, however, examine Plaintiffs' arguments and/or evidence specific to Ms. Frazzini's Motions. The Ulibarri Response contains very little argument specific to Ms. Frazzini. In the Hunt Response, Plaintiffs arguments concerning Ms. Frazzini are generally limited to pages 18–23.

12

required elements of disparate treatment discrimination.[12] Finally, Ms. Frazzini claims she is entitled to the defense of qualified immunity.

3.  Analysis

    a.  *Conspiracy*

Plaintiffs must identify evidence showing a mutual understanding or meeting of the minds among the conspirators. *Abercrombie v. City of Catoosa*, 896 F.2d 1228, 1230–31 (10th Cir. 1990) (civil conspiracy requires evidence that two or more persons acted in concert). Plaintiff Ulibarri contends that Ms. Frazzini conspired "most directly and specifically" with Defendants Levinski and Marquez. Ulibarri Response at 19. Plaintiffs do not describe the "mutual understanding or meeting of minds" that Ms. Frazzini reached with an alleged co-conspirator. Plaintiffs admit that they support the conspiracy claim against Ms. Frazzini with only conjecture. For example, they provide several possible scenarios in which an "implied" agreement to conspire *might have* arisen.

> "The agreement may have started as an implied agreement (meaning an agreement that Defendant Frazinni (sic), while she was Director of Human Resources (sic) would never start an investigation into the discriminatory circumstances that led to the walking out of [other employees], the demotion of Assistant Superintendents …, and the restructuring that demoted Plaintiffs Hunt and Ulibarri despite repeated notice and explicit complaint (sic), and that she would further attempt to secure the resignations from Plaintiff (sic) Hunt and Ulibarri) which eventually ripened into the contract above guaranteeing Defendant Frazinni (sic) a job for as long as Defendant Levinski was superintendent, … or may have always been explicitly oral, and ripened into the more limited agreement reflected in the written document. Immediately after that Agreement with the conspiracy, guaranteeing her future, was signed Defendant Frazinni's (sic) *September 17, 2011 Follow-up Notes to the Public Education Department, which are attached hereto and included herein as Exhibit 25 ….*

---

[12] Ms. Frazzini may believe that Plaintiffs pursue a claim of disparate impact discrimination. Reply to Hunt Motion at 7. However, the Court has already determined that Plaintiffs pursue only a claim of disparate treatment discrimination. Memorandum Opinion and Order at 30 n.21 (Doc. No. 273).

Hunt Response at 19–20 (emphasis in original).

Plaintiffs fail to identify evidence that Ms. Frazzini reached an agreement with someone to "never start an investigation" into "discriminatory circumstances." *See id.* Plaintiffs do not cite to evidence in the record showing that they were entitled some sort of investigation that they did not receive. In response to the question of when Mr. Hunt asked Ms. Frazzini to protect him or to investigate, Mr. Hunt stated: "I can't give you a definite deal." Hunt Dep. at 261. Mr. Hunt thought he might have asked Ms. Frazzini "What can you do to help me? *Id.* He recognized that he had not made a formal written request for an investigation and that he had just talked to Ms. Frazzini. *Id.* In contrast, Ms. Frazzini provided an affidavit stating Mr. Hunt never asked her to conduct any investigation on his behalf or to conduct a hearing regarding his reassignment. Frazzini Aff. ¶ 8 (Doc. No. 184–4).

Plaintiffs do not link their allegations that Ms. Frazzini received some sort of "notice and explicit complaint[s]" to evidence in the record. There is no evidence demonstrating that Ms. Frazzini "attempted to secure the resignations" of Plaintiffs. Instead, there is evidence that Ms. Frazzini and Mr. Hunt discussed his "leave and what my options were at that point in time." Hunt Dep. at 258. "[Ms. Frazzini] put together … how much leave I had left …. And she brought a couple of proposals to me." *Id.* "[Ms. Frazzini] was listing how I could probably get as many [work] quarters as I could for my retirement." *Id.* at 258–59. And that was the discussion between her and I." *Id.* at 259.

Similarly, there is evidence that Ms. Frazzini tried to help Ms. Ulibarri retain her job. After the elimination of Ms. Ulibarri's position, Ms. Frazzini told Ms. Ulibarri of an opening in the Data Department. Frazzini Aff. ¶ 10. After Ms. Ulibarri met with the Data Department supervisor, Ms. Ulibarri informed Ms. Frazzini that she planned to quit or retire and that she

wanted to have some dental work done. *Id.* ¶¶ 10–12. Ms. Frazzini asked Ms. Ulibarri not to quit

and to at least use her sick leave to get the dental work done. Ms. Frazzini also explained to Ms.

Ulibarri that if she needed more time, she could take FMLA leave. *Id.* Although Ms. Ulibarri

"felt" that Ms. Frazzini was trying to get her to resign, Ulibarri Dep. at 101 (Doc. No. 223–2),

Ms. Ulibarri's feelings are not evidence. Moreover, there is no evidence showing that Ms.

Frazzini had anything to do with the decision to eliminate Ms. Ulibarri's position or the 2011

reorganization.

Ms. Ulibarri testified that sometime between July 25 and August 1, 2011, she told Ms.

Frazzini, of her opinions that she, Mr. Hunt, Mr. Epperson, Byron Manning, Sharon Jensen, and

Tim Kienitz were all demoted or discharged because of their race or religion. Ulibarri Dep. at

84–85. Despite Ms. Ulibarri's opinions or beliefs about alleged unlawful conduct, there is no

evidence that Ms. Frazzini made any of these personnel decisions or that she had the authority to

change any of the reassignments that Mr. Levinski made.

Although Plaintiffs argue that a written "contract" existed between Ms. Frazzini and Mr.

Levinski that guaranteed Ms. Frazzini's future with CCSD, Plaintiffs do not provide a copy of

the written contract. Ms. Ulibarri, however, testified that Ms. Frazzini "got herself a get-out-of-

jail-free card. She went in there to Mr. Levinski and asked him to sign the paper; as long as he

was superintendent of CCSD, she would retain her job." Ulibarri Dep. at 186.

Ms. Frazzini's testimony about Levinski's promise of employment is much less clear

than Plaintiffs wish. Ms. Frazzini stated that when Mr. Levinski told her of her demotion from

HR Director to a Data Department employee, he indicated to her "that it was either him or me.

And that he thought, 'Oh, well, you know, we could've worked together, type of general

statement.'" Frazzini Dep. at 109. Ms. Frazzini asked Mr. Levinski: "Can I have that in writing?"

*Id.* According to Ms. Frazzini, Mr. Levinski answered "Yes. … As long as I'm superintendent,

you will have employment with CCSD." *Id.* Ms. Frazzini stated that she had that promise in

writing although the document was not produced. *Id.* at 109–110. The Court does not know what

to make of this purported promise by Mr. Levinski, particularly in view of Ms. Frazzini's

significant demotion from a department director to a data specialist. But other than speculation,

Plaintiffs have not demonstrated that the alleged "agreement" amounted to a meeting of the

minds between Mr. Levinski and Ms. Frazzini to discriminate against Plaintiffs.

Plaintiffs also rely on five pages of typed notes authored by Ms. Frazzini (Doc. No. 224–

6),[13] as evidence that Ms. Frazzini was well aware of the conspiracy but neglected to do anything

about it until Ms. Frazzini supposedly "secured" Ms. Levinski's written promise "guaranteeing

[Ms. Frazzini's] employment." Ulibarri Response at 13. According to Plaintiffs, these were Ms.

Frazzini's "follow-up notes to the Public Education Department [PED]" regarding a complaint

that Ms. Frazzini made to PED.[14] Hunt Response at 20.

The first paragraph of the 5-page document states that "[t]here are different areas of

concern that need to be addressed within CCSD. These topics have been bouncing through my

head and my heart since I was interviewed by you on September 13, 2011 …. Frazzini Notes at 1

(Doc. No. 224–6). Under Topic No. 1, "Abena McNeely," Ms. Frazzini raises issues about

student test scores in Ms. McNeely's classes, the application or hiring of a secretary, Ms.

McNeely's legal proceeding against CCSD and her supposed disclosure of settlement terms, Mr.

---

[13] This single-spaced document is not on letterhead and contains no official identification. On page 5 of the document, Ms. Frazzini's written signature may appear over her printed name and a date of 9/17/11. Defendants, however, have not challenged the authenticity of this document and the Court will consider it.
[14] There is little evidence in the record regarding Ms. Frazzini's complaint to the PED and no evidence about the outcome of that complaint. Plaintiffs asked Ms. Frazzini whether she had complained about "anglo discrimination" to the PED regarding her own demotion, and Ms. Frazzini stated "Yeah." Frazzini Dep. at 102.

Nicolay's predictions to an employee that Mr. Levinski would become the Superintendent, and Ms. Frazzini's questions about the enforcement of Ms. McNeely's settlement. *Id.* at 1–2.

Under Topic No. 2, "Ed Marquez," Ms. Frazzini addresses the issue of Mr. Marquez's pre-selection as Director of Operations. When Mr. Levinski stated at a Cabinet Meeting on July 6, 2011, that he needed to post an opening for the Director of Operations position, Ms. McNeely supposedly stated "Oh, that's Mr. Marquez (sic) position." *Id.* at 2. News of Mr. Marquez's alleged pre-selection for the Director of Operations position had "slipped out." Plaintiff Hunt and other individuals had interviewed for the Director of Operations position, but Ms. Frazzini knew that Plaintiff Hunt was not asked the same questions as other applicants. In addition, Ms. Frazzini had learned at coffee with friends that "Ed [Marquez] was the new Director of Operations." "Community word was that Ed had the job." *Id.* at 2.

Under Topic No. 3, "Don Levinski," Ms. Frazzini questions the termination procedure of a specific special education teacher and Mr. Levinski's apparent change of mind about the termination. Supposedly, Mr. Levinski also asked Ms. Frazzini whether two employees (a Science Coach and a custodian) were Navajo. *Id.* at 4.

Under topic No. 4, "Hiring practices since May 31, 2011," Ms. Frazzini states that two positions were not posted for all to apply (those filled by Ms. McNeely and Pandora Mike) and that Mr. Marquez and Mr. Kasper were pre-selected for their positions. *Id.* at 4–5.

Under Topic No. 5, "Board and NEA,[15]" Ms. Frazzini states that it had been "long known that the Board and NEA are aligned." Supposedly, a former CCSD Administrator reported to Ms. Frazzini that some Board members and the CCEA President Ed Marquez had dinner at Hoskie Benally's house following Board elections. *Id.* at 5.

---

[15] Presumably, NEA stands for the National Education Association although the briefing does not make this clear.

Even if considered admissible evidence, Ms. Frazzini's notes do not raise genuine disputes of material fact regarding the existence of a conspiracy, an agreement between Ms. Frazzini and an alleged co-conspirator to discriminate against Plaintiffs based on their race or religion, or an overt act taken by Ms. Frazzini in furtherance of a conspiracy.

Because Plaintiffs have failed to raise a genuine dispute of material fact with respect to the required elements of the conspiracy claim, the Court will dismiss the conspiracy claim against Ms. Frazzini (Count IV) with prejudice.

        *b.  Discrimination under the HRA*

Plaintiffs generally rely on the same purported evidence of a conspiracy to show discriminatory treatment under the HRA. Or, put differently, Plaintiffs make the same nonsensical arguments in support of the discrimination claim. For example, under the heading, "A Prima Facie Case of Discrimination Exists for Plaintiff Ulibarri," Ms. Ulibarri asserts that "Defendant Benally has admitted believing and acting on a clearly-illegal Native American hiring scheme at CCSD, and discussed this in open Board meetings as well as Executive Session (sic), including specifically some of the Executive Sessions and Board Meetings involved herein." Ulibarri Response at 20–21. Nowhere under this section of the Response does Ms. Ulibarri refer to evidence of discrimination or evidence of an adverse action by Ms. Frazzini. *See id*. at 20–24.

Plaintiffs' primary support for the discrimination claim against Ms. Frazzini is based on Ms. Frazzini's inaction, e.g., her failure to provide due process hearings related to Plaintiffs' reassignments or demotions, her failure to order an investigation into the "discriminatory conspiracy," or her general failure to protect Plaintiffs. *Id.* However, Plaintiffs identify no evidence that they were entitled to a due process hearing or an investigation or that they

specifically requested a hearing or investigation that Ms. Frazzini denied. Moreover, Plaintiffs do not demonstrate how any of Ms. Frazzini's supposed failures demonstrate unlawful discrimination by Ms. Frazzini. Plaintiffs' conclusory argument that Ms. Frazzini "knowingly acceded in a number of Defendant Levinski's illegal actions" is not evidence sufficient to raise a genuine dispute of material fact that Ms. Frazzini discriminated against Plaintiffs on the basis of their race or religion.

Nor does evidence that Mr. Levinski failed to inform Mr. Hunt of the substance of "complaints" about Mr. Hunt's work in the Transportation Department implicate Ms. Frazzini. It is undisputed that Ms. Frazzini had no input in the decision to demote Mr. Hunt and that she was not present when Mr. Levinski told Mr. Hunt of the demotion to Grounds Foreman.

The Court concludes that Plaintiffs have not identified any genuine disputes of material fact with respect to the required elements of a disparate treatment discrimination claim under the New Mexico HRA. While Plaintiffs have shown that they suffered adverse employment actions in terms of their demotions in their efforts to defeat Mr. Levinski's Motion for Summary Judgment, Plaintiffs have provided no evidence that Ms. Frazzini took any type of actions against them or that she acted with discriminatory intent. For example, Ms. Frazzini did not devise or implement the 2011 reorganization. She did not demote Plaintiffs, and she played no role in their resignations that occurred some five months after the end of her tenure as HR Director. The undisputed evidence is that Ms. Frazzini had no authority to demote Plaintiffs or reassign their positions and that she was uninvolved in the 2011 reorganization. Accordingly, the Court will dismiss Plaintiffs' claim of disparate treatment discrimination (Count VIII) against Ms. Frazzini with prejudice.

**Qualified Immunity**

Based on the Court's conclusion that Plaintiffs' evidence of conspiracy against Ms.

Frazzini is lacking, the Court need not reach Defendant's contention that Ms. Frazzini is entitled

to qualified immunity on the conspiracy claim. However, the Court concludes, in the alternative,

that Plaintiffs have failed to show how Ms. Frazzini's conduct violated clearly established law.

Therefore, Ms. Frazzini is entitled to qualified immunity on Plaintiffs' conspiracy claim.

For a constitutional right to be clearly established, "the contours of the right must be

sufficiently clear that a reasonable official would understand that what he is doing violates that

right." *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir.), *cert. denied*, 134 S.Ct. 426 (2013)

(citation omitted). "A plaintiff may satisfy this standard by identifying an on-point Supreme

Court or published Tenth Circuit decision; alternatively, the clearly established weight of

authority from other courts must have found the law to be as the plaintiff maintains." *Quinn*, 780

F.3d at 1005 (citation omitted).

According to Ms. Frazzini, there is no evidence that she violated clearly established law

under 42 U.S.C. § 1983. Ms. Frazzini argues that: 1) there is no United States Supreme Court or

Tenth Circuit decision "providing that a human resources director with no power or supervisory

authority to employ, assign, terminate, or discharge a plaintiff could have caused that plaintiff to

suffer any adverse employment action at all, let alone an alleged constructive discharge[;] and

2) there is no Supreme Court or Tenth Circuit decision providing that an employee has a

constitutional right to compel a human resources director to conduct an investigation on the

employee's behalf or to arrange for a hearing regarding the employee's assigned position after

the human resources director no longer occupies that position. Ulibarri Motion at 11; Hunt

Motion at 12.

Plaintiffs phrase the qualified immunity inquiry as follows: "Was there clearly established law forbidding entry into a conspiracy that intentionally discriminated against Mormons and/or Anglos, denied all process of law and policy, and demoted and retaliated against each of Plaintiffs, and entering into a quid-pro-quo deal to protect one's job in clear violation of your own acknowledged duties?" Hunt Response at 30. Or, "Was there clearly established law forbidding entry into a conspiracy that intentionally discriminated against Mormons and/or Anglos, denied all process of law and policy, repeatedly breached the Plaintiffs' contracts, and demoted and retaliated against each of the Plaintiffs, while proclaiming a non-existent Navajo preference, and negotiating quid-pro-quo deals for Board votes?" Ulibarri Response at 30.

The Court does not agree with either characterization of the issue. Plaintiffs' phrasing of the issue assumes many facts that are not supported by evidence. For example, Plaintiffs have failed to come forward with evidence that Ms. Frazzini 1) entered into a conspiracy with another person or persons; 2) acted with discriminatory animus or intent in her communications with Plaintiffs; 3) denied Plaintiffs' requests for an investigation or hearing; 4) negotiated, executed, or breached Plaintiffs' employment contracts; 5) entered into a quid-pro-quo deal of any sort; 6) articulated a Navajo hiring preference; 7) played any role in reassigning or demoting Plaintiffs; 8) negotiated School Board votes; or 9) violated her duties as HR Director. In addition, Plaintiffs' allegations of a "denial of all process of law and policy" makes no sense.

Plaintiffs have not satisfied their "heavy burden" of identifying on-point legal authority supporting their position. Stated differently, a reasonable jury could not find facts supporting a violation of a constitutional right, which was clearly established at the time of the defendant's conduct. *See Estate of Booker*, 745 F.3d at 411. Offering a single-spaced quotation from case law

regarding general principles of qualified immunity and referring the Court to unidentified existing law that Plaintiffs "have developed … at some length above," Hunt Response at 30, simply does not pass muster.

The Court concludes, in the alternative, that Defendant Frazzini is entitled to qualified immunity on the conspiracy claim (Count IV). Therefore, the Court will grant Defendant Frazzini's Motions for Summary Judgment.

IT IS ORDERED that: (1) DEFENDANT NANCY FRAZZINI'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF JEFFREY HUNT'S CLAIMS AND ACCOMPANYING MEMORANDUM (Doc. No. 183) is GRANTED; (2) DEFENDANT NANCY FRAZZINI'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF ULIBARRI'S CLAIMS AND ACCOMPANYING MEMORANDUM (Doc. No. 181) is GRANTED; and (3) a separate Summary Judgment in favor of Defendant Nancy Frazzini will be entered.

_____

SENIOR UNITED STATES DISTRICT JUDGE