IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JEFFREY HUNT and
ALICE ULIBARRI,

       Plaintiffs,

v.                                                                                                  No. CIV 11-1144 JP/SCY

CENTRAL CONSOLIDATED SCHOOL
DISTRICT, a municipal government agency,
and HOSKIE BENALLY, ED MARQUEZ,
DON LEVINSKI, NANCY FRAZINNI [sic],
MATTHEW TSO, SCOTT NICOLAY, and
PHIL KASPER, Individually,

       Defendants.

                                                                        Consolidated with:

SHARON JENSEN,

       Plaintiff,

v.                                                                                                         No. CIV 12-1018 JP/SCY

CENTRAL CONSOLIDATED SCHOOL
DISTRICT, a municipal government agency,
and HOSKIE BENALLY, ED MARQUEZ,
DON LEVINSKI, MATTHEW TSO,
and SCOTT NICOLAY, Individually,

       Defendants.

**MEMORANDUM OPINION AND ORDER**

       In this opinion, the Court addresses two Motions for Summary Judgment and/or

Qualified Immunity filed by Defendant Ed Marquez: 1) DEFENDANT ED MARQUEZ'S

MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF JEFFREY HUNT'S CLAIMS

1

(Hunt Motion) (Doc. Nos. 187, 188); and 2) DEFENDANT ED MARQUEZ'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF ULIBARRI'S CLAIMS (Ulibarri Motion) (Doc. Nos. 185, 186). Mr. Marquez seeks summary judgment and/or qualified immunity as to all of Plaintiffs' claims against him. Plaintiffs argue that there is direct evidence to support their claims against Mr. Marquez and that this case is ready for trial.

The Court has reviewed all of the related briefing, including Plaintiffs' separate responses and Mr. Marquez's separate replies. *See* PLAINTIFF HUNT'S RESPONSE TO DEFENDANT NICOLAY'S (sic) MOTION FOR SUMMARY JUDGMENT ON THEIR (sic) CLAIMS (Hunt Response) (Doc. No. 231); PLAINTIFF ULIBARRI'S RESPONSE TO DEFENDANT MARQUEZ'S MOTION FOR SUMMARY JUDGMENT ON HER CLAIMS (Ulibarri Response) (Doc. No. 233); REPLY SUPPORTING DEFENDANT ED MARQUEZ'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF JEFFERY HUNT'S CLAIMS (Doc. No. 259); and REPLY SUPPORTING DEFENDANT ED MARQUEZ'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF ALICE ULIBARRI'S CLAIMS (Doc. No. 260).

After careful consideration of the pertinent law, briefing, and exhibits, the Court will grant Mr. Marquez's two Motions for Summary Judgment and will dismiss, with prejudice, Mr. Hunt's and Ms. Ulibarri's claims of: 1) conspiracy under 42 U.S.C. § 1985(3) (Count IV); 2) discrimination under the New Mexico Human Rights Act (HRA) (Count VIII); and 3) discrimination under Title VII (Count X), as asserted against Mr. Marquez.

**Background**[1]

Plaintiffs Jeffrey Hunt and Alice Ulibarri are "Anglo and Mormon" and allege that Defendant Marquez participated in a conspiracy to discriminate against them based on their race and religion. THIRD AMENDED COMPLAINT FOR DAMAGES AND DECLARATORY JUDGMENT ¶¶ 1, 2, 72 (Count IV) (Doc. No. 93). Plaintiffs contend that in about 2011, a "conspiracy formed within the Senior Supervisory staff at CCSD" that resulted in demoting or removing Plaintiffs from their CCSD positions and replacing them with non-Mormon or "Native American aligned" employees. *See* Amended Joint Status Report and Provisional Discovery Plan at 3 (Doc. No. 124). Plaintiffs also assert that Mr. Marquez discriminated against them based on their race and/or religion. Complaint ¶¶ 76–78, 82–84.

At all pertinent times, Plaintiffs were residents of Kirtland, San Juan County, New Mexico and were employees of Central Consolidated School District (CCSD).[2] According to the 2000 census, Kirtland, New Mexico had a population of a little over 6,000 residents. The town was founded in the early 1880s by Mormons or Latter-Day Saints (LDS), who named the New Mexico town after Kirtland, Ohio.[3] CCSD includes about 18 schools in a 4,500 square mile area, serves numerous communities, and has a total enrollment of approximately 6,800 students, a majority of whom are Native American. *See* Complaint ¶ 3 (CCSD "has both a predominantly Native American student body, and a predominantly Native American workforce with a close to 90% Native American student body, and …, a close to 75% Native American workforce."). *See also* Defendants' Response to Interrogatory No. 18 (Doc. No. 223–4). *But see* Defendants'

---

[1] The Court does not repeat the Procedural Background of this case which is discussed in detail in its March 2, 2016 MEMORANDUM OPINION AND ORDER at 3–6 (Doc. No. 273). In addition, the Court observes that it already granted Mr. Marquez's Motion for Summary Judgment as to all claims against him by Plaintiff Sharon Jensen. *Id.* at 25 n. 19.
[2] The background facts are undisputed and set forth in more detail in the Court's March 2, 2016 Opinion.
[3] *See* Phil Kasper Dep. (Doc. No. 174–7) at 32. *See also* https://en.wikipedia.org/wiki/Kirtland,New_Mexico (January 28, 2016). The Court may take judicial notice of facts that are generally known and accepted. *Mills v. Denver Tramway Corp.*, 155 F.2d 808, 811 (10th Cir. 1946).

Response to Interrogatory No. 19 (noting Defendants' estimate that about 52% of the workforce was Native American) and Byron Manning's Aff. ¶ 8 (stating that more than 50% of CCSD's work force was Native American) (Doc. No. 223–5).

## Legal Standards

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The party seeking summary judgment bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (internal quotation marks omitted). Once the movant meets this burden, Rule 56 requires the non-moving party to designate specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). In considering a motion for summary judgment, then, the Court's "role is simply to determine whether the evidence proffered by plaintiff would be sufficient, if believed by the ultimate factfinder, to sustain her claim." *Foster v. Alliedsignal, Inc.*, 293 F.3d 1187, 1195 (10th Cir. 2002).

"The doctrine of qualified immunity protects public or government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant asserts qualified immunity, the plaintiff bears the heavy burden of satisfying a "strict

two-part test." *McBeth v. Himes*, 598 F.3d 708, 716 (10th Cir. 2010) (citation omitted). The plaintiff must establish 1) that the defendant violated a constitutional or statutory right, and 2) that the right was clearly established at the time of the defendant's conduct. *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015).

When the defendant moves for summary judgment based on qualified immunity, the Court views the facts in the light most favorable to the non-moving party and resolves all factual disputes and reasonable inferences in its favor. *See Estate of Booker* v. *Gomez*, 745 F.3d 405, 411 (10th Cir. 2014).

## Undisputed Material Facts

### *CCSD Reorganization*

On May 28, 2011, CCSD's School Board voted to make Mr. Levinski CCSD's acting Superintendent. In June and July 2011, Mr. Levinski implemented a reorganization that resulted in the elimination of some higher level administrative positions, in the reassignment of some CCSD employees from Director positions to Coordinator positions, and in other reclassifications of positions. Mr. Levinski's rationale for the administrative reorganization included his plans "to bring CCSD's administrative expenses in line with the administrative expenses of similar school districts in New Mexico," to shift funding away from the administrative expenses and into the classroom, to increase the educational level of employees in upper administration positions, and "to increase minority representation in the supervisory positions." *See* Defendants' Response to Discovery (Doc. No. 179–5 at 3); Levinski Dep. at 105, 108 (Doc. No. 220–1); Randy Manning Dep. at 64 (Doc. No. 224–3).

*Acting Superintendent Levinski*

Defendant Levinski had the exclusive power and duty to hire, fire, and assign employees, and he was responsible for reassigning CCSD employees in mid-2011, including the reassignments of Plaintiffs' positions in mid-2011. Mr. Levinski did not consult Mr. Marquez about the reassignment decisions or the demotions of Mr. Hunt or of Ms. Ulibarri.

*Defendant Ed Marquez*

Mr. Marquez was employed by CCSD from August 13, 2001 to May 23, 2014. On about July 25, 2011, Mr. Marquez was promoted from his position as teacher to CCSD's Director of Operations, a new position that CCSD and/or Mr. Levinski had created in 2011. Mr. Hunt also applied and interviewed for the position of Director of Operations, but the position required a Master's Degree. Unlike Mr. Marquez, who had two Master's Degrees, Mr. Hunt did not have a Master's Degree. Mr. Marquez served as Director of Operations from July 2011 until early June 2012. The Director of Operations has no authority to hire, fire, assign, promote, or demote CCSD's employees. Mr. Marquez did not sign Plaintiffs' employment contracts and took no part in the July 2011 reorganization decisions.

On the morning of July 25, 2011, Mr. Marquez learned that he was selected as CCSD's Director of Operations. But, Mr. Marquez had not yet signed an employment contract in his new position when he met with Mr. Levinski and Mr. Hunt later on July 25th.

*Plaintiff Jeffrey Hunt*

Plaintiff Hunt had been CCSD's Director of Transportation for about 14 years until July 2011, when that position was eliminated in the 2011 reorganization. Plaintiff Hunt signed an employment contract for the school year of 2011–2012 in the reassigned position of Coordinator

of Transportation. He was to receive the same salary of over $85,000.00 that he had received previously.

Mr. Levinski conducted the July 25, 2011 meeting with Mr. Marquez and Mr. Hunt, at which time Mr. Levinski told Mr. Hunt that he was being reassigned from Coordinator of Transportation to Grounds Foreman due to "complaints." Mr. Levinski did not describe the nature of the complaints. However, Mr. Hunt was to receive the same salary for the contract year. Mr. Levinski gave Plaintiff Hunt a letter, dated July 25, 2011, memorializing the demotion. Mr. Marquez did not sign the letter and played no role in Mr. Levinski's decision to reassign or demote Mr. Hunt. Mr. Hunt had never met Mr. Marquez before the July 25 meeting.

Mr. Hunt was very upset by his demotion and with Mr. Levinski's failure to explain the nature of the complaints against him. In addition, Mr. Hunt contends that he asked Mr. Levinski and Mr. Marquez where he was to report in his new position of Grounds Foreman and that Mr. Levinski and Mr. Marquez "looked at each other with the amazement" when they realized that Mr. Hunt was going to accept the demotion. Hunt Dep. at 88 (Doc. No. 188–1). According to Mr. Hunt, Mr. Levinski and Mr. Marquez did not know where Mr. Hunt was to report for work. *Id.*

Earlier in the day on July 25, Mr. Hunt had an appointment with his doctor from whom he obtained a letter supporting a leave request Mr. Hunt intended to give to Mr. Levinski. Mr. Hunt apparently did not know about the July 25 afternoon meeting or the demotion to Grounds Foreman when Mr. Hunt decided to request sick leave based on a medical condition. *Id.* at 90. At the July 25 meeting, Mr. Hunt told Mr. Levinski and Mr. Marquez that he was going to take sick leave and presented them with the doctor's letter. Mr. Hunt took sick leave following the July 25, 2011 meeting and never returned to work at CCSD although he continued to receive his salary

until his later resignation. Mr. Hunt used accrued paid leave and exhausted that leave as of February 2012. Mr. Hunt resigned, effective February 24, 2012. He could have remained employed at CCSD as the Grounds Foreman through June 29, 2012, the end of his contract year.

Mr. Marquez exchanged some emails with Mr. Hunt and Ms. Frazzini, CCSD's former HR Director, concerning Mr. Hunt's use of sick leave. Mr. Marquez's correspondence with Mr. Hunt include an email, dated September 12, 2011, in which Mr. Marquez, as Director of Operations, told Mr. Hunt that CCSD's records indicated that Mr. Hunt's approved leave was about to expire. Mr. Marquez stated that if Mr. Hunt did not present "valid medical documentation that merits consideration of granting further leave the district will consider you in a non-leave status … and will review all options available and will exercise those options that best suit the needs/mission of the district." Sept. 12, 2011 email (Doc. No. 231–2). At some point, Mr. Levinski directed Mr. Marquez not to communicate further with Mr. Hunt "until the situation [was] resolved." Marquez Dep. at 115, 116 (Doc. No. 188–2). Mr. Marquez did not engage in subsequent communications with Mr. Hunt, and Mr. Hunt continued to use available leave until he resigned in February 2012.

The only other time Mr. Marquez observed Mr. Hunt after the July 25 meeting occurred when Mr. Hunt was clearing out his office in Kirtland at the "bus barn." Marquez Aff. ¶ 7 (Doc. No. 188–5). Although it is not entirely clear, it appears that Mr. Marquez told Mr. Hunt to return work property to Mr. Hunt's secretary, a request that Mr. Hunt found demeaning. Hunt Dep. at 86 (Doc. No. 188–1). Thereafter, Mr. Marquez did not speak to Mr. Hunt, and he never saw Mr. Hunt again at CCSD.

*Plaintiff Alice Ulibarri*

Plaintiff Ulibarri was CCSD's Custodial Supervisor for about 7 years until July 2011, and was paid $59,807.00. In July 2011, as a result of the reorganization, the Custodial Supervisor position was eliminated. Ms. Ulibarri signed an employment contract in July 2011, although she was not assigned a specific position at that time. Following her reassignment, Ms. Ulibarri was given a temporary job in CCSD's Human Resources Department. Ms. Ulibarri was promised the same salary for the school year that she had received previously and could have remained employed at CCSD until June 29, 2012.

During the week of July 21, 2011, Ms. Ulibarri requested leave for dental surgery, and began to take that leave beginning on September 1, 2011. CCSD gave Ms. Ulibarri written notice that her paid leave would be designated as, and run concurrently with, her leave under the Family and Medical Leave Act (FMLA). Ms. Ulibarri had used nearly all of her accrued leave at the time she submitted her resignation, effective February 24, 2012.

With respect to allegations against Mr. Marquez, Ms. Ulibarri describes an incident that occurred in Ms. Frazzini's office when Mr. Marquez "stood through [sic] that glass [window at one end of Ms. Frazzini's office] and watched [Ms. Ulibarri] talking to Nancy [Frazzini] … He stood there and harassed me in HR looking at Nancy and I while we were conversing, which is rude, which is intimidating, which is harassment. He said, 'What are you still doing here?'" Ms. Ulibarri volunteered that she "cannot stand Ed Marquez." When asked if these were the instances of harassment by Mr. Marquez, Ms. Ulibarri responded, "As far as I know." Ulibarri Dep. at 245 (Doc. No. 186–1).

Although Mr. Marquez states that he does not recall looking through a window and seeing Ms. Ulibarri speaking to Ms. Frazzini, Mr. Marquez remembered asking Ms. Ulibarri at

9

some point why she was still in the District's Administration building since Mr. Marquez thought Ms. Ulibarri had been reassigned elsewhere. According to Mr. Marquez, Ms. Ulibarri responded that she wanted to complete some work she had started and that she would then be submitting a request for retirement. Marquez Aff. ¶ 10.

## Discussion

Plaintiffs each present the same three claims against Mr. Marquez: (1) unlawful conspiracy under 42 U.S.C. § 1985(3) (Count IV); (2) unlawful discrimination under the HRA, based on race and religion (Count VIII); and (3) unlawful discrimination under Title VII, based on race and religion (Count X).

1. <u>Legal Standards</u>

   a. *Conspiracy*

To prove a conspiracy in violation of 42 U.S.C. § 1985(3), a plaintiff must show "(1) the existence of a conspiracy (2) intended to deny [the plaintiff] equal protection under the laws or equal privileges and immunities of the laws (3) resulting in an injury or deprivation of federally-protected rights, and (4) an overt act in furtherance of the object of the conspiracy." *Murray v. City of Sapulpa*, 45 F.3d 1417, 1423 (10th Cir. 1995) (citations omitted). *See also Tilton v. Richardson,* 6 F.3d 683, 686 (10th Cir. 1993), *cert. denied*, 510 U.S. 1093 (1994) (setting out essential elements of a § 1985(3) conspiracy claim). To support a conspiracy claim, a plaintiff must show a meeting of the minds or agreement among the defendants and a concerted action. *See Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998) (discussing § 1983 conspiracy claim). Section 1985(3) only reaches conspiracies "motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus."[4] *Tilton*, 6 F.3d at 686.

---

[4] It is unclear whether Anglo individuals may bring a claim of unlawful conspiracy under § 1985(3). *See United Brotherhood of Carpenters & Joiners v. Scott*, 463 U.S. 825, 837 (1983) (noting that it was a "close question

A plaintiff may rely on direct or circumstantial evidence to support a conspiracy claim. *See Gallegos v. City and Cnty of Denver*, 984 F.2d 358, 364 (10th Cir.) (noting that "plaintiff has not established, by either direct or circumstantial evidence, that there was a meeting of minds or agreement among certain of the defendants, discriminatorily motivated, to deprive her of equal protection"), *cert. denied*, 508 U.S. 972 (1993).

    b. *Discrimination under the New Mexico Human Rights Act*

Under the New Mexico HRA, Plaintiffs bear the burden of establishing that: 1) the plaintiff belongs to a protected class; 2) the plaintiff was qualified for the position; 3) the plaintiff suffered an adverse employment action; and 4) the plaintiff was treated less favorably than others. *See Argo v. Blue Cross and Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1201 (10th Cir. 2006).[5] However, in reverse discrimination cases, the first element is modified to require the plaintiff to establish background circumstances that support an inference that the defendant is one of the unusual employers who discriminates against groups who normally do not experience discrimination. *Id.* (citation omitted).

    c. *Discrimination under Title VII*

"The relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of [Title VII]." *Haynes v. Williams*, 88 F.3d 898, 899 (10th Cir. 1996) (citation omitted). Because Judge Browning already dismissed Plaintiffs' Title VII claims against all of the individual Defendants, *Hunt, et al. v. Central Consol. Sch. Dist.*, 951 F. Supp. 2d 1136, 1204–05 (D.N.M. 2013), there is no need to address a Title VII claim against Defendant Marquez.

---

whether § 1985(3) was intended to reach any class-based animus other than animus against Negroes"). However, Defendant Marquez did not raise this question and the Court does not decide it.

[5] The same analysis applies to the discrimination claims whether brought under Title VII or its state law analog, the New Mexico Human Rights Act. *Garcia–Montoya v. State Treasurer's Office*, 2001–NMSC–003, ¶ 39, 130 N.M. 25, 16 P.3d 1084.

2. Analysis

    a. *Undisputed Material Facts (UMFs)*

As required by this District's Local Rules, D.N.M. LR-Civ. 56.1(b), Mr. Marquez sets out separate concise statements of material facts as to which he contends no genuine issue exists. The facts are numbered and refer with particularity to the portions of the record on which Mr. Marquez relies. *Id. See* Hunt Motion at 2–6 and Ulibarri Motion at 3–5.

In their Responses to the Motions, Plaintiffs fail to abide by this District's local rules with respect to summary judgment briefing. They do not present a "concise statement of the material facts cited by the movant as to which the non-movant contends a genuine issues does exist." D.N.M. LR-Civ. 56.1(b). And, Plaintiffs' alleged "facts" do not "refer with particularity to those portions of the record upon which the non-movant relies." *See* Hunt Response (misidentified as Mr. Hunt's Response to Mr. Nicolay's Motion) at 3–16; Ulibarri Response 3–17. Instead, Plaintiffs rely on conclusory argument and hyperbole in lieu of evidence to support the existence of a genuine dispute of material fact. Or, they refer to their own statement of "facts" that are unsupported by evidence in the record. Or, worse, they simply refer to other Responses and arguments in opposition to other Defendants' Motions for Summary Judgment. *See* Memorandum Opinion and Order granting Defendant Frazzini's Motion for Summary Judgment at 10–11 (Doc. No. 280) (discussing Plaintiffs' same flawed approach).

In response to the Hunt Motion, Plaintiffs state that they admit only Undisputed Material Fact (UMF) No. 7 of Mr. Marquez's 15 UMFs.[6] In response to the Ulibarri Motion, Plaintiffs admit two of Mr. Marquez's 11 UMFs. A close examination of both Responses reveals that Plaintiffs have not successfully raised a genuine dispute of material fact as to any of the UMFs in

---

[6] Although Plaintiffs state that UMF No. 7 is undisputed, Plaintiffs later appear to contest UMF No. 7. Hunt Response at 3, 11. In addition, Plaintiffs essentially contend that UMF Nos. 1–6 and 8–15 are in dispute but they fail to specifically address UMF No. 4. *See* Hunt Response at 5–11.

12

either Motion. Plaintiffs' reliance on conclusory argument does not suffice. They fail to identify the specific content of Mr. Marquez's Statements of UMFs that they challenge with citations to evidence in the record.

Instead of describing the many deficiencies in Plaintiffs' briefing, *see*, *e.g.,* Memorandum Opinion and Order as to Mr. Kasper at 8–12 (Doc. Nos. 271), Memorandum Opinion and Order as to CCSD and Mr. Levinski at 9 n.5 (Doc. No. 273), and Memorandum Opinion and Order as to Ms. Frazzini at 10–12 (Doc. No. 280), the Court notes the following example which is illustrative of the problems in Plaintiffs' Responses. Mr. Marquez's UMF No. 3 contains three sentences: 1) before mid-July 2011, CCSD created a new position of Director of Operations; 2) Mr. Hunt applied and interviewed for the position but did not satisfy the educational requirement for the job; and 3) Mr. Marquez, who had two Master's Degrees, was hired as Director of Operations. Hunt Motion at 3.

Plaintiffs attempt to challenge these three straightforward sentences by presenting eight pages of argument, including references to "Plaintiff's Facts," "all of Plaintiff's Facts," "Plaintiffs' Statement of Substantially-Evidenced Facts" at pages "5–6," "6–8," "8–10," "11," "11-12," 12–13," "13–15," "15–17," "17–19," 20–22," and "22–23" in Plaintiffs' Response to Mr. Benally's Motion for Summary Judgment, Plaintiffs' Response to Mr. Levinski's Motion for Summary Judgment, and various immaterial exhibits. Hunt Response at 5–12. Thus, not only do Plaintiffs expect the Court to read eight pages of argument in relation to three short sentences, UMF No. 3, Plaintiffs also ask the Court to read another 20 pages or more of their Responses to other Defendants' Motions for Summary Judgment. *See id.* The Court will not take this impossible journey. It is clear from Plaintiffs' rambling and, at times, incoherent briefing, that Plaintiffs have no evidence sufficient to raise a genuine dispute of material fact as to any of

Defendant Marquez's UMFs in support of either Motion for Summary Judgment. Accordingly, the Court concludes that all of Defendant Marquez's UMFs in his Motions for Summary Judgment are undisputed.[7]

> b. *Conspiracy and/or Discrimination Based on Race or Religion*

Even though the Court has determined that Mr. Marquez's statements of material facts are undisputed, the Court still must decide if Mr. Marquez has satisfied his "initial burden of demonstrating that no material issues of fact remain for trial" as to Plaintiffs' claims of conspiracy and/or discrimination based on race or religion. Only then may the Court find that Mr. Marquez is entitled to judgment as a matter of law. *See Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002) (In circumstances where the non-movant fails to respond or fails to raise a genuine dispute of material fact, the Court must make "the additional determination that judgment for the moving party is 'appropriate' under Rule 56.").

> i. Conspiracy Claim

Based on the undisputed evidence, Mr. Marquez did not enter into any sort of mutual understanding or meeting of the minds with Mr. Levinski or another purported co-conspirator with the plan or intention to discriminate against Plaintiffs. *See Abercrombie v. City of Catoosa*, 986 F.2d 1228, 1230–31 (10th Cir. 1990) (discussing elements of civil conspiracy). Similarly, there is no evidence that Mr. Marquez took some sort of concerted action against either Plaintiff. In fact, Mr. Marquez had not met Mr. Hunt until the middle of 2011, and Mr. Marquez had very limited contact with either Plaintiff. The undisputed material facts establish that Mr. Marquez

---

[7] In deciding other Defendants' Motions for Summary Judgment, the Court has discussed in detail many of Plaintiffs' same allegations that are repeated from Response to Response, e.g., the purported "quid pro quo" deal for Mr. Marquez's position as Director of Operations, the alleged conspiracy to elect Mr. Levinski as Superintendent and Mr. Levinski's supposed "purchase" of school board votes, the 2011 reorganization and Mr. Nicolay's predictions of employee reassignments, and Mr. Tso's blogging activities. *See* Memorandum Opinions and Orders (Doc. Nos. 271, 273, 278, 280).

had no authority to make personnel-related decisions as to Plaintiffs' demotions and/or reassignments and that Mr. Marquez took no part in CCSD's reorganization in July 2011. Because the undisputed material facts establish that neither Plaintiff Hunt nor Plaintiff Ulibarri can satisfy the required elements of a civil conspiracy claim under 42 U.S.C. § 1985(3), the Court will dismiss both Plaintiffs' conspiracy claims (Count IV) against Mr. Marquez.

ii.     HRA Discrimination Claim

The Court reaches a similar conclusion as to Plaintiffs' HRA claims of discrimination against Mr. Marquez. Based on the undisputed material facts, Mr. Marquez did not take any adverse employment action against either Plaintiff, and, in fact, had no authority to demote or reassign Plaintiffs. Thus, the undisputed material facts establish that Mr. Marquez took no action that could have injured either Plaintiff.

In addition, Mr. Marquez's email to Mr. Hunt requiring documentation to support Mr. Hunt's continued use of sick time is not evidence of unlawful conduct, nor could it be considered retaliation against Mr. Hunt based on his race or religion. It is not unusual for employers to ask employees to substantiate their future use of sick time with a doctor's note. *See Garcia v. Bd. of Regents of the Univ. of New Mexico,* No. CIV 09-0203 RB/RHS, 2010 WL 2606285, at *7 (D.N.M. June 2, 2010) (noting that an employer's request for medical documentation to support future use of sick leave was not an adverse employment action). Mr. Hunt argues that he had "abundant sick leave and vacation leave available [and was] threatened with termination by Defendant Marquez [since] Plaintiff Hunt [was] waiting for an already scheduled appointment with his Doctor to secure a note justifying the leave, and his need for reasonable accommodation." Hunt Response at 14. But, Plaintiffs provide no evidence of Mr. Marquez's "threat" to terminate Mr. Hunt. Even if Mr. Hunt construed an email from Mr. Marquez as

15

threatening, the undisputed evidence is that Mr. Hunt continued to use his accrued leave well after the date of Mr. Marquez's email. Nor do Plaintiffs establish with admissible evidence that Mr. Marquez was authorized to terminate Mr. Hunt's employment, that Mr. Hunt had "abundant sick leave, or that Mr. Hunt notified Defendants about a scheduled doctor's appointment when this issue arose. In other words, Plaintiffs' use of unsupported and conclusory argument does not create a genuine dispute of material fact as to alleged discrimination by Mr. Marquez.

Similarly, Mr. Hunt's allegation that Mr. Marquez required him to hand in work property to Mr. Hunt's secretary is not evidence of unlawful conduct. While Mr. Hunt may have felt uncomfortable and/or demeaned, Plaintiffs produce no direct or circumstantial evidence to support the argument that Mr. Marquez made the request based on Plaintiffs' race or religion. For example, Plaintiffs did not present any evidence that Mr. Marquez made racial or religious slurs against Plaintiffs or against any CCSD employee.

The same is true with respect to Plaintiffs' slim evidence that Mr. Marquez harassed Ms. Ulibarri by looking at her through a glass window while Ms. Ulibarri was speaking to Ms. Frazzini or by asking Ms. Ulibarri why she was still in a particular work area. This simply is not evidence of unlawful conduct by Mr. Marquez.

Because the undisputed material facts establish that neither Plaintiff Hunt nor Plaintiff Ulibarri can satisfy the required elements of a discrimination claim under the New Mexico Human Rights Act, the Court will dismiss both Plaintiffs' discrimination claims (Count VIII) against Mr. Marquez. Accordingly, the Court will grant Mr. Marquez's Motions for Summary Judgment in their entirety.

**Qualified Immunity**

Based on the Court's conclusion that Plaintiffs' evidence of conspiracy against Mr. Marquez is lacking, the Court need not reach Defendant's position that Mr. Marquez is entitled to qualified immunity on the conspiracy claim. However, the Court concludes, in the alternative, that Plaintiffs have failed to show how Mr. Marquez's conduct violated clearly established law. Therefore, Mr. Marquez is entitled to qualified immunity on Plaintiffs' conspiracy claim.

For a constitutional right to be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir.), *cert. denied*, 134 S.Ct. 426 (2013) (citation omitted). "A plaintiff may satisfy this standard by identifying an on-point Supreme Court or published Tenth Circuit decision; alternatively, the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Quinn*, 780 F.3d at 1005 (citation omitted).

According to Mr. Marquez, there is no evidence that he violated clearly established law under 42 U.S.C. § 1983. Mr. Marquez argues that there is no United States Supreme Court or Tenth Circuit decision "providing that a teacher[8] with no power to supervisory authority over a plaintiff acts in furtherance of an alleged pre-existing conspiracy simply by being present when the plaintiff's supervisor informed the plaintiff that the plaintiff was being reassigned and/or demoted." Hunt Motion at 11. Mr. Marquez also contends that there is no pertinent legal authority "providing that a teacher with no power or authority to fire, demote, or otherwise control the working conditions of a plaintiff could have caused that plaintiff to suffer any adverse

---

[8] It is undisputed that Mr. Marquez had been promoted from teacher to Director of Operations on the morning of July 25, 2011, but that Mr. Marquez had not signed an employment contract in his new position before he met with Mr. Levinski and Mr. Hunt on the afternoon of July 25th.

employment action at all, let alone an alleged constructive discharge." *Id.* at 11–12. *See also* Ulibarri Motion at 12 (setting forth similar argument).

Plaintiffs phrase the qualified immunity inquiry as follows: "Was there clearly established law forbidding entry into a conspiracy that intentionally discriminated against Mormons and/or Anglos, denied all process of law and policy, repeatedly breached the Plaintiffs [sic] contracts, and demoted and retaliated against each of the Plaintiffs, while loudly proclaiming a non-existent Navajo preference, and negotiating quid-pro-quo deals for Board votes?" Hunt Response at 28, Ulibarri Response at 29. Although none of this language pertains directly to Mr. Marquez, Plaintiffs also argue that there was a "knowing failure" by Mr. Marquez "to deviate from the conspiracy's chosen course." *Id*.

Plaintiffs' phrasing of the issue assumes many facts that are not supported by evidence. For example, Plaintiffs have failed to come forward with evidence that Mr. Marquez 1) entered into a conspiracy with another person or persons; 2) acted with discriminatory animus or intent in his communications with Plaintiffs; 3) took any actions with respect to Plaintiffs' employment contracts; 4) played any role in Plaintiffs' reassignments or demotions; 5) "loudly proclaimed" any type of hiring preference; or 6) failed to take some legally required action. In addition, Plaintiffs' allegation of a "denial of all process of law and policy" makes no sense.

Plaintiffs have not satisfied their "heavy burden" of identifying on-point legal authority supporting their position. Stated differently, a reasonable jury could not find facts supporting a violation of a constitutional right, which was clearly established at the time of the defendant's conduct. *See Estate of Booker*, 745 F.3d at 411. Offering a single-spaced quotation from case law regarding general principles of qualified immunity and referring the Court to unidentified

existing law that Plaintiffs "have developed … at some length above," Hunt Response at 28 and Ulibarri Response at 29, simply do not pass muster.

The Court concludes, in the alternative, that Defendant Marquez is entitled to qualified immunity on the conspiracy claim (Count IV). Therefore, the Court will grant Defendant Marquez's Motions for Summary Judgment as to the claims of conspiracy by Mr. Hunt and Ms. Ulibarri.

IT IS ORDERED that: (1) DEFENDANT ED MARQUEZ'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF JEFFREY HUNT'S CLAIMS (Doc. No. 187) is GRANTED; (2) DEFENDANT ED MARQUEZ'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF ULIBARRI'S CLAIMS (Doc. No. 185 is GRANTED; and (3) a separate Summary Judgment in favor of Defendant Ed Marquez will be entered.

_____
SENIOR UNITED STATES DISTRICT JUDGE