**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

JEFFREY HUNT and
ALICE ULIBARRI,

        Plaintiffs,

v.                                                                                    No. CIV 11-1144 JP/SCY

CENTRAL CONSOLIDATED SCHOOL
DISTRICT, a municipal government agency,
and HOSKIE BENALLY, ED MARQUEZ,
DON LEVINSKI, NANCY FRAZINNI [sic],
MATTHEW TSO, SCOTT NICOLAY, and
PHIL KASPER, Individually,

        Defendants.

                                                     Consolidated with:

SHARON JENSEN,

        Plaintiff,

v.                                                                                    No. CIV 12-1018 JP/SCY

CENTRAL CONSOLIDATED SCHOOL
DISTRICT, a municipal government agency,
and HOSKIE BENALLY, ED MARQUEZ,
DON LEVINSKI, MATTHEW TSO,
and SCOTT NICOLAY, Individually,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

DEFENDANT HOSKIE BENALLY'S MOTION FOR SUMMARY JUDGMENT

(Motion) (Doc. No. 194) asks the Court to dismiss the sole claim of conspiracy under 42 U.S.C.

§ 1985(3) brought against him by Plaintiffs Jeffrey Hunt and Alice Ulibarri.[1] PLAINTIFFS'
RESPONSE TO DEFENDANT BENALLY'S MOTION FOR SUMMARY JUDGMENT ON
THEIR CLAIMS at 2–3 (Response) (Doc. No. 225) contends that there is "direct and substantial
evidence of conspiracy among the Defendants, specifically including Defendant [School] Board
Member Benally," and that "there is little doubt that the Plaintiffs' claims against Ms. [sic]
Benally are ready for trial." DEFENDANT HOSKIE BENALLY'S REPLY TO MOTION FOR
SUMMARY JUDGMENT (Reply) (Doc. No. 250) asserts that Plaintiffs cannot establish the
required elements of a conspiracy claim, and that Mr. Benally is also entitled to qualified
immunity.

After careful consideration of the pertinent law, briefing, and exhibits, the Court will
grant Mr. Benally's Motion for Summary Judgment and will dismiss, with prejudice, Mr. Hunt's
and Ms. Ulibarri's sole claim of conspiracy (Count IV) against Mr. Benally.[2]

## Background[3]

Plaintiffs Jeffrey Hunt and Alice Ulibarri are "Anglo and Mormon" and allege that
Defendant Benally participated in a conspiracy to discriminate against them based on their race
and religion. THIRD AMENDED COMPLAINT FOR DAMAGES AND DECLARATORY
JUDGMENT ¶¶ 1, 2, 72 (Count IV) (Doc. No. 93). Plaintiffs contend that in about 2011, a

---

[1] Mr. Benally's Motion also asks the Court to dismiss Plaintiff Sharon Jensen's claims against him, but the Court
previously dismissed all of Ms. Jensen's claims against Defendants. MEMORANDUM OPINION AND ORDER at
25 n.19 (Doc. No. 273).

[2] Mr. Benally states that while Plaintiffs assert only a claim of conspiracy against him, "Plaintiffs' claims are for
discrimination based upon race and religion," and include the legal theories of "constructive discharge, breach of
covenant of good faith and fair dealing, equal protection violations brought under § 1983, violations of the New
Mexico Human Rights Act and violations of Title VII." Motion at 2. Mr. Benally then notes that "in the context of
the § 1985 conspiracy claim, only the § 1983 equal protection claim need be considered because an actionable
§ 1985 conspiracy claim requires a violation of constitutional rights." *Id.* In the Complaint, Plaintiffs set forth a
separate § 1983 claim, including the allegation that Plaintiffs Equal Protection rights were violated. Complaint
¶¶ 64–68 (Count III). However, Plaintiffs brought that claim only against Defendant CCSD "Not the Individuals."
Complaint at 36. The Court examines Plaintiff's sole claim of conspiracy against Mr. Benally.

[3] The Court does not repeat the Procedural Background of this case which is discussed in detail in its March 2, 2016
decision at 3–6 (Doc. No. 273).

"conspiracy formed within the Senior Supervisory staff at CCSD" that resulted in demoting or removing Plaintiffs from their CCSD positions and replacing them with non-Mormon or "Native American aligned" employees. *See* Amended Joint Status Report and Provisional Discovery Plan at 3 (Doc. No. 124).

At all pertinent times, Plaintiffs were residents of Kirtland, San Juan County, New Mexico and were employees of Central Consolidated School District (CCSD).[4] According to the 2000 census, Kirtland, New Mexico had a population of a little over 6,000 residents. The town was founded in the early 1880s by Mormons or Latter-Day Saints (LDS), who named the New Mexico town after Kirtland, Ohio.[5] CCSD includes about 18 schools in a 4,500 square mile area, serves numerous communities, and has a total enrollment of approximately 6,800 students, a majority of whom are Native American. *See* Complaint ¶ 3 (CCSD "has both a predominantly Native American student body, and a predominantly Native American workforce with a close to 90% Native American student body, and …, a close to 75% Native American workforce."). *See also* Defendants' Response to Interrogatory No. 18 (Doc. No. 223–4). *But see* Defendants' Response to Interrogatory No. 19 (noting Defendants' estimate that about 52% of the workforce was Native American) and Byron Manning's Aff. ¶ 8 (stating that more than 50% of CCSD's work force was Native American) (Doc. No. 223–5).

## Legal Standards

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When applying this standard, the Court examines the factual record and reasonable

---

[4] The background facts are undisputed and set forth in more detail in the Court's March 2, 2016 Opinion.
[5] *See* Phil Kasper Dep. (Doc. No. 174–7) at 32. *See also* https://en.wikipedia.org/wiki/Kirtland,New_Mexico (January 28, 2016). The Court may take judicial notice of facts that are generally known and accepted. *Mills v. Denver Tramway Corp.*, 155 F.2d 808, 811 (10th Cir. 1946).

inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The party seeking summary judgment bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (internal quotation marks omitted). Once the movant meets this burden, Rule 56 requires the non-moving party to designate specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). In considering a motion for summary judgment, then, the Court's "role is simply to determine whether the evidence proffered by plaintiff would be sufficient, if believed by the ultimate factfinder, to sustain her claim." *Foster v. Alliedsignal, Inc.*, 293 F.3d 1187, 1195 (10th Cir. 2002).

"The doctrine of qualified immunity protects public or government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant asserts qualified immunity, the plaintiff bears the heavy burden of satisfying a "strict two-part test." *McBeth v. Himes*, 598 F.3d 708, 716 (10th Cir. 2010) (citation omitted). The plaintiff must establish 1) that the defendant violated a constitutional or statutory right, and 2) that the right was clearly established at the time of the defendant's conduct. *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015).

When the defendant moves for summary judgment based on qualified immunity, the Court views the facts in the light most favorable to the non-moving party and resolves all factual

disputes and reasonable inferences in its favor. *See Estate of Booker* v. *Gomez*, 745 F.3d 405, 411 (10th Cir. 2014).

**Undisputed Material Facts**[6]

### *CCSD School Board*

In the Spring of 2011, CCSD's School Board was comprised of five voting members: School Board President Matthew Tso, Lupita White, Bernice Benally (now deceased), Hoskie Benally, and Randy Manning. At all pertinent times, the School Board consisted of four Navajo Members and 1 Anglo/Mormon Member (Randy Manning). Randy Manning Dep. at 46–47 (Doc. No. 229–3). The Superintendent of CCSD is also on the School Board. Byron Manning Aff. ¶ 8.

On May 26, 2011, the School Board, in an executive session, voted to place former CCSD Superintendent Gregg Epperson (Anglo, non-Mormon) on administrative leave. Randy Manning Dep. at 45–46. On May 28, 2011, the School Board voted to make Don Levinski (Anglo, religion unstated) CCSD's acting Superintendent. *Id.* at 59–63. The breakdown of the votes to place Mr. Epperson on administrative leave and to make Mr. Levinski acting Superintendent, in both cases, was 4 to 1. Mr. Manning, the only non-Native American on the School Board, voted against placing Mr. Epperson on leave and against making Mr. Levinski acting Superintendent.

---

[6] Unless the Court indicates otherwise, Plaintiffs' attempts to contest these Undisputed Material Facts (UMFs) are unsuccessful. In some instances, Plaintiffs' challenges to the UMFs concern immaterial distinctions, e.g., that Plaintiff Jensen worked for more than 30 years at CCSD rather than for only 30 years. In most instances, Plaintiffs have failed to comply with D.N.M. LR-Civ. 56.1(b) that requires the non-movant to refer "with particularity to those portions of the record upon which the non-movant relies" to dispute certain UMFs. *See* MEMORANDUM OPINIONS AND ORDERS (Doc. Nos. 271, 280, 284) (discussing Plaintiffs' flawed approach in other Responses to Defendants' Motions for Summary Judgment). Generally, Plaintiffs' references to evidence in the record are neither concise nor particular. Mr. Hoskie's Reply at 3–11 provides a cogent discussion of why most of Plaintiffs' "Substantially-Evidenced Facts" are immaterial or fail to raise genuine disputes of material fact.

The School Board has no authority over CCSD's hiring and disciplinary decisions, with the exception of the Superintendent, whom the School Board elects and/or disciplines.

### *CCSD Reorganization*

In June and July 2011, Mr. Levinski implemented a reorganization at CCSD that resulted in the elimination of some higher level administrative positions, in the reassignment of some CCSD employees from Director positions to Coordinator positions, and in other reclassifications of positions. Mr. Levinski's rationale for the administrative reorganization included his plans "to bring CCSD's administrative expenses in line with the administrative expenses of similar school districts in New Mexico," to shift funding away from the administrative expenses and into the classroom, to increase the educational level of employees in upper administration positions, and "to increase minority representation in the supervisory positions." *See* Defendants' Response to Discovery (Doc. No. 194–4 at 3); Levinski Dep. at 105–109 (Doc. No. 225–1); Randy Manning Dep. at 64.

### *Acting Superintendent Levinski*

Mr. Levinski had the exclusive power and duty to hire, fire, and assign employees, and he was responsible for reassigning CCSD employees in mid-2011, including the reassignments of Plaintiffs' positions. Plaintiffs have emphasized that Defendant Levinski acted alone with respect to decisions about the reorganization. "Defendant Levinski arrived at the idea of the re-structuring on his own [and] did not get Board or Administrative input into the decision …." Plaintiffs' Response at 15 to Mr. Levinski's Motion for Summary Judgment (Doc. No. 202). Mr. Levinski did not consult Mr. Benally about the reassignment decisions or the demotions of Mr. Hunt or of Ms. Ulibarri and did not ask the School Board for permission to execute the 2011 reorganization. Levinski Dep. at 113. Mr. Levinski did, however, talk with his cabinet members

about the positions that the reorganization would affect although he did not discuss specific employees.

### *Plaintiff Jeffrey Hunt*

Plaintiff Hunt had been CCSD's Director of Transportation for about 14 years until July 2011, when that position was eliminated in the 2011 reorganization. On July 18, 2011, Plaintiff Hunt signed an employment contract for the school year of 2011–2012 in the reassigned position of Coordinator of Transportation. He was to receive the same salary of over $85,000.00 that he had received previously.

On July 25, 2011, Mr. Levinski informed Mr. Hunt that he was being reassigned from Coordinator of Transportation to Grounds Foreman due to "complaints" about Mr. Hunt, but Mr. Levinski did not describe the nature of the complaints to Mr. Hunt. At the July 25 meeting, Mr. Hunt told Mr. Levinski and Ed Marquez, who was also present, that he was going to take sick leave. Mr. Hunt presented a doctor's letter to support his request. Mr. Hunt took sick leave following the July 25, 2011 meeting and never returned to work at CCSD although he continued to receive his salary until his resignation. Mr. Hunt used accrued paid leave and exhausted that leave as of February 2012. Mr. Hunt resigned, effective February 24, 2012. He could have remained employed at CCSD as the Grounds Foreman at the same salary through June 29, 2012, the end of his contract year.

### *Plaintiff Alice Ulibarri*

Plaintiff Ulibarri was CCSD's Custodial Supervisor for about 7 years until July 2011, and was paid $59,807.00. In July 2011, as a result of the reorganization, the Custodial Supervisor position was eliminated. On July 25, 2011, Ms. Ulibarri signed an employment contract with CCSD although she was not assigned a specific position at that time. Thereafter, Ms. Ulibarri

was given a temporary job in CCSD's Human Resources Department. Ms. Ulibarri was promised the same salary for the school year that she had received previously and could have remained employed at CCSD until June 29, 2012.

During the week of July 21, 2011, Ms. Ulibarri requested leave for dental surgery, and began to take leave beginning on September 1, 2011. CCSD gave Ms. Ulibarri written notice that her paid leave would be designated as, and run concurrently with, her leave under the Family and Medical Leave Act (FMLA). Ms. Ulibarri had used nearly all of her accrued leave at the time she submitted her resignation, effective February 24, 2012.

### ***Defendant Hoskie Benally***

Mr. Benally, in his capacity as School Board Member, first learned of Mr. Levinski's decision to restructure various administrative positions at CCSD when an organizational chart was presented for informational purposes at a School Board meeting. The School Board did not vote on the 2011 reorganization and there is no evidence that the School Board had any input in the 2011 reorganization decisions. Mr. Levinski had already conducted some of the restructuring when the School Board was shown the organizational chart.

At various School Board meetings, Mr. Benally raised the issue of a "Navajo hiring preference" at CCSD. The Navajo Nation leased certain parcels of land to CCSD. Mr. Benally understood that the leases between the Navajo Nation and CCSD contained language requiring CCSD, as the lessee, to adhere to a Navajo hiring preference. *See* Leases (Doc. No. 250–3) (containing language that lessee "shall give preference in employment arising in connection with this lease to qualified, willing and available Navajos …." or language that "lessee shall give employment preference to those individuals who have a substantial understanding of the Navajo culture and speak fluent English and Navajo…."). Mr. Benally sent Mr. Levinski an email

inquiring about the status of a Navajo hiring preference but did not hear back from Mr. Levinski.

Mr. Benally questioned why CCSD was not employing a Navajo hiring preference if pertinent

leases contained that requirement, although Mr. Benally did not say he believed in a Navajo

hiring preference. Benally Dep. at 52–53 (Doc. No. 194–7). Mr. Benally did not think it was

"CCSD policy" to employ a Navajo hiring preference and did not know if CCSD's Human

Resources Department was using a Navajo hiring preference. Mr. Benally stated that he was not

suggesting that CCSD replace educators or administrators with Navajo personnel. *Id.* at 51–53,

185.

Mr. Benally has a Mormon background and graduated from Brigham Young University.

Although he has Mormon relatives, Mr. Benally is not a practicing Mormon. Mr. Benally did not

know that Mr. Hunt or Ms. Ulibarri were Mormons at the time they worked for CCSD.

### Discussion

Plaintiffs each present a single claim of conspiracy under 42 U.S.C. § 1985(3) (Count IV)

against Mr. Benally. Mr. Benally argues that the conspiracy claims fails as a matter of law or that

he is entitled to the defense of qualified immunity.

*A.   Required Elements of a Conspiracy*

To prove a conspiracy in violation of 42 U.S.C. § 1985(3), a plaintiff must show "(1) the

existence of a conspiracy (2) intended to deny [the plaintiff] equal protection under the laws or

equal privileges and immunities of the laws (3) resulting in an injury or deprivation of federally-

protected rights, and (4) an overt act in furtherance of the object of the conspiracy." *Murray v.*

*City of Sapulpa*, 45 F.3d 1417, 1423 (10th Cir. 1995) (citations omitted). *See also Tilton v.*

*Richardson,* 6 F.3d 683, 686 (10th Cir. 1993), *cert. denied*, 510 U.S. 1093 (1994) (setting out

essential elements of a § 1985(3) conspiracy claim). To support a conspiracy claim, a plaintiff

must show a meeting of the minds or agreement among the defendants and a concerted action. *See Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998) (discussing § 1983 conspiracy claim). Section 1985(3) only reaches conspiracies "motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus."[7] *Tilton*, 6 F.3d at 686.

A plaintiff may rely on direct or circumstantial evidence to support a conspiracy claim. *See Gallegos v. City and Cnty of Denver*, 984 F.2d 358, 364 (10th Cir.) (noting that "plaintiff has not established, by either direct or circumstantial evidence, that there was a meeting of minds or agreement among certain of the defendants, discriminatorily motivated, to deprive her of equal protection"), *cert. denied*, 508 U.S. 972 (1993).

B. *Analysis*

Plaintiffs have not identified evidence of a meeting of the minds or an agreement between Mr. Benally and Mr. Levinski or with any other alleged co-conspirator. The undisputed facts demonstrate that: 1) Mr. Benally did not have input in the 2011 reorganization; 2) Mr. Levinski did not consult Mr. Benally or other School Board members about how to implement the reorganization; and 3) Mr. Levinski had already started reorganizing CCSD's administrative positions before Mr. Benally learned of his reorganization plan. Plaintiffs have not refuted, with evidence, the uncontested facts that the School Board had no authority over personnel decisions and that it took no part in the reorganization. Indeed, Plaintiffs emphasize that Mr. Levinski "arrived at the idea of the re-structuring on his own [and] did not get Board … input into the decision …." Response at 19. Thus, it stands to reason, that there is no evidence that Mr. Benally

---

[7] It is unclear whether Anglo individuals may bring a claim of unlawful conspiracy under § 1985(3). *See United Brotherhood of Carpenters & Joiners v. Scott*, 463 U.S. 825, 837 (1983) (noting that it was a "close question whether § 1985(3) was intended to reach any class-based animus other than animus against Negroes"). However, Defendant Benally did not raise this question and the Court does not decide it.

reached an agreement with Mr. Levinski or took a concerted action that was intended to deny Plaintiffs equal protection under the law in relation to their 2011 reassignments.

Plaintiffs rely on evidence that during School Board meetings, Mr. Benally had spoken "for years" in favor of a Navajo hiring preference at CCSD. Response at 3. While Mr. Benally does not specifically deny this allegation, he claims that he questioned why CCSD was not employing a Navajo hiring preference based on language in written land leases between the Navajo Nation and CCSD that required some type of Navajo hiring preference. Even accepting Plaintiffs' allegation as true that Mr. Benally long championed a Navajo hiring preference at CCSD, there is no evidence that Mr. Benally had any authority to make personnel-related changes at CCSD or to influence the CCSD Superintendent in this regard. Nor is there evidence that Mr. Benally and Mr. Levinski met together or even communicated with one other. Although Mr. Benally wrote Mr. Levinski asking him about lease language concerning a Navajo hiring preference, Mr. Benally received no response from Mr. Levinski. "Without any evidence of communication between [Mr. Benally and Mr. Levinski], there is nothing to give rise to the inference that they conspired." *Abercrombie v. City of Catoosa, Okl.*, 896 F.2d 1228, 1231 (10th Cir. 1990).

Plaintiffs also rely on argument that Mr. Levinski, with Mr. Marquez, engineered School Board votes in Mr. Levinski's favor. Plaintiffs identify evidence that Mr. Levinski promised Mr. Marquez the Director of Operations position if Mr. Marquez was able to secure Mr. Benally's vote for Mr. Levinski as Superintendent. Response at 4, 10. However, there is no evidence in the record that Mr. Marquez actually influenced Mr. Benally to vote for Mr. Levinski. Mr. Marquez asked Mr. Benally to vote for Mr. Levinski, but Mr. Marquez did not recall that Mr. Benally agreed with the request. Marquez Dep. at 85–86 (Doc. No. 250–2). While Mr. Benally voted for

Mr. Levinski as Superintendent, there is no evidence that Mr. Benally did so because of Mr. Marquez's request. Mr. Benally testified that the individual who was his first choice for the Superintendent position was out of the county and unavailable when the Board needed to select a Superintendent. Benally Dep. at 92–93 (Doc. No. 250–1).

Moreover, Plaintiffs' theory of the case makes little sense. According to Plaintiffs, Mr. Benally's opinions about a Navajo hiring preference were well known and longstanding. Plaintiffs also imply or argue that Mr. Levinski's similar views essentially prompted the 2011 reorganization. *See e.g.*, Response at 13, 19.. But, if Mr. Benally and Mr. Levinski were on the same page with respect to employing a Navajo hiring preference at CCSD, why would Mr. Levinski need to influence Mr. Benally's vote for him?

In addition, while Plaintiffs imply that Mr. Benally held anti-Mormon and anti-Anglo beliefs, s*ee* Response at 3 ¶D, Mr. Benally has a Mormon background and Mormon relatives. He attended and graduated from a Mormon-affiliated university, and he voted for an Anglo Superintendent. Plaintiffs have provided the Court with no evidence that Mr. Benally and other alleged co-conspirators were motivated by a discriminatory animus towards Plaintiffs' religion. It is undisputed that Mr. Benally did not know Plaintiffs were Mormon when they were employed at CCSD.

In sum, Plaintiffs primarily rely on conclusory argument to support the conspiracy claim.[8] Their lack of specific facts showing an agreement and concerted action is fatal to the claim. Because the Court concludes that the record is devoid of any evidence that suggests Mr. Benally and Mr. Levinski or another alleged co-conspirator had an agreement to deprive Plaintiffs of their rights to equal protection of the law in light of their religion and race, or any evidence of a conspiratorial nexus, the Court will grant Mr. Benally's Motion for Summary Judgment as to the conspiracy claim (Count IV) which will be dismissed, with prejudice.

### C. Qualified Immunity

Based on the Court's conclusion that Plaintiffs' evidence of conspiracy against Mr. Benally is lacking, the Court need not reach Defendant's argument that Mr. Benally is entitled to qualified immunity on the conspiracy claim. However, the Court concludes, in the alternative, that Plaintiffs have failed to show how Mr. Benally's conduct violated clearly established law. Therefore, Mr. Benally is entitled to qualified immunity on Plaintiffs' conspiracy claim.

For a constitutional right to be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir.), *cert. denied*, 134 S.Ct. 426 (2013) (citation omitted). "A plaintiff may satisfy this standard by identifying an on-point Supreme

---

[8] For example, Plaintiffs argue that Mr. Benally "clearly acted on his beliefs in concert with other Defendants[,]" "took what he wanted[,]" and "directly and openly enforced anti-Mormon and Anglo employment practices at CCSD." Response at 3. There are no citations to the record for these conclusions and no specific evidence detailing when Mr. Benally "acted on his beliefs," with whom he acted, or how he had any authority to enforce any type of employment practice at CCSD. Furthermore, Plaintiffs' arguments about personnel decisions affecting Mr. Epperson, a previous CCSD Superintendent, and Byron Manning, a former CCSD employee, are immaterial to Plaintiffs' conspiracy claim against Mr. Benally. This case does not concern Mr. Epperson's or Mr. Manning's employment history with CCSD, the disciplinary actions they received, or their monetary settlements with CCSD. Similarly, Mr. Benally's supposed statement during a car ride with Plaintiff Jensen to the effect that Mr. Benally believed Byron Manning "was sending money to Salt Lake City" has no relevance. Response at 6 (citing Jensen Dep. at 179) (Doc. No. 228–1). Finally, although Plaintiffs' Response sporadically mentions Mr. Benally, the vast majority of the brief is cut and pasted from Response to Response and concerns other Defendants and arguments that have no bearing as to Mr. Benally. *See, e.g.,* Response at 9–27 (referring to Mr. Benally in two or three instances).

Court or published Tenth Circuit decision; alternatively, the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Quinn*, 780 F.3d at 1005 (citation omitted).

Mr. Benally argues that New Mexico law authorizes only the Superintendent of a school district to make employment decisions regarding employees like Plaintiffs, and that he as a School Board member, could not have taken any personnel-related actions against Plaintiffs. Motion at 12 (citing NMSA 1978 § 22-5-14). The evidence demonstrates that Mr. Benally took no action regarding Plaintiffs' employment and that he lacked the authority to make any such employment decisions. Thus, according to Mr. Benally, "[t]he law is not clearly established that Mr. Benally had the capacity to participate in a conspiracy with Mr. Levinski to violate Plaintiff's [sic] Equal Protection rights." *Id.* at 12. *See also* Reply at 14.

Plaintiffs articulated the qualified immunity inquiry as follows: "Was there clearly established law forbidding entry into a conspiracy that intentionally discriminated against Mormons and/or Anglos, denied all process of law and policy, demoted and retaliated against each of the Plaintiffs, while loudly proclaiming a non-existent Navajo preference, and negotiating quid-pro-quo deals for Board votes?" Response at 31. Although none of this language pertains directly to Mr. Benally, Plaintiffs also argue that there was a "knowing failure" by Mr. Benally "to deviate from the conspiracy's chosen course." *Id.*

Plaintiffs' phrasing of the issue assumes many facts that are not supported by evidence. For example, Plaintiffs have failed to come forward with evidence that Mr. Benally 1) entered into a conspiracy with another person or persons; 2) had any communications with Plaintiffs; 3) acted with discriminatory animus or intent in his communications with Plaintiffs; 4) took any actions with respect to Plaintiffs' employment contracts; 5) played any direct role in Plaintiffs'

14

reassignments or demotions; or 6) failed to take some legally required action. In addition, Plaintiffs' allegation of a "denial of all process of law and policy" makes no sense.

Although the Court does not necessarily agree with Mr. Benally's version of the qualified immunity inquiry, the Court concludes that Plaintiffs have not satisfied their "heavy burden" of identifying on-point legal authority supporting their position. Stated differently, a reasonable jury could not find facts supporting a violation of a constitutional right, which was clearly established at the time of the defendant's conduct. *See Estate of Booker*, 745 F.3d at 411. Offering a single-spaced quotation from case law regarding general principles of qualified immunity and referring the Court to unidentified existing law that Plaintiffs "have developed … at some length above," Response at 31, simply do not pass muster.

The Court concludes, in the alternative, that Defendant Benally is entitled to qualified immunity on the conspiracy claim (Count IV). Therefore, the Court will grant Mr. Benally's Motions for Summary Judgment as to the claims of conspiracy by Mr. Hunt and Ms. Ulibarri.

IT IS ORDERED that: (1) DEFENDANT HOSKIE BENALLY'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 194) is GRANTED; and (2) a separate Summary Judgment in favor of Defendant Hoskie Benally will be entered.

_____
SENIOR UNITED STATES DISTRICT JUDGE